IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEWAYNE D. MCNAIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1354 (MN) |
| | ) | |
| BRIAN EMIG, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

## **MEMORANDUM OPINION**


Dewayne D. McNair  – *Pro se* Petitioner.

Kathyrn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington,
DE – Attorney for Respondents.

August 22, 2024
Wilmington, Delaware

---

[1]     The Court has substituted Warden Brian Emig for former Warden Robert May, an original
party to the case.  *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2254 ("Petition") filed by Petitioner Dewayne D. McNair ("Petitioner").  (D.I. 2, 4).  The State

filed an Answer in opposition (D.I. 12), to which Petitioner filed a Reply (D.I. 16).  For the reasons

discussed, the Court will deny the Petition.

I.     **BACKGROUND**

> [O]n December 5, 2012, [Petitioner] was driving a rental car, a gray
> Honda, when he was stopped by police at 8th and Spruce Street in
> Wilmington, Delaware. [Petitioner] was the only occupant in the
> car.  [Petitioner] was taken into custody and his vehicle was driven
> back to the Wilmington Police Department.  After obtaining
> permission to conduct an administrative search of the car, a loaded
> handgun was found underneath the passenger seat.
>
> [Petitioner] was also found to be in possession of about 6 grams of
> cocaine. In [Petitioner's] waist band he had a clear knotted plastic
> sandwich bag that contained 5.38 grams of cocaine in a brick-type
> form and seven smaller yellow in color Ziploc baggies containing a
> combined total of .82 grams of cocaine.  These small bags of cocaine
> are commonly referred to as "dime" bags.  The 5.38 grams of
> cocaine in the bag, in a brick type form, was worth about $538, and
> the seven bags of cocaine in the dime bags were worth about $70-
> 80.  The combined worth of the cocaine was about $600.
>
> [Petitioner] was also found in possession of $231.00.  There was no
> drug paraphernalia found in the car to indicate personal use.  No
> straws, pipes or anything else that may be used to ingest drugs were
> found in the car.  Nor was there any indicia of drug dealing such as
> scales, empty baggies to package drugs, cutting agents or drug
> ledgers.

*State v. McNair*, 2019 WL 5678359, at *1-2 (Del. Super. Ct. Oct. 29, 2019).

In January 2013, a New Castle County grand jury returned an indictment charging

Petitioner with drug dealing (Count One), possession of a firearm during the commission of a

felony ("PFDCF") (Count Two), possession of a deadly weapon by a person prohibited

("PDWBPP") (Count Three), carrying a concealed deadly weapon ("CCDW") (Count Four), and

1

driving without a valid license (Count Five).  (D.I. 13-4 at 13-15)  The PDWBPP charge was severed from the other charges for trial.  The State entered a *nolle prosequi* for the driving without a valid license charge on November 19, 2013.  *See McNair*, 2019 WL 5678359, at *1.  On November 22, 2013, a Superior Court jury found Petitioner guilty of drug dealing and PFDCF.  *See id*.  On January 8, 2014, a Superior Court jury found Petitioner not guilty of the severed PDWBPP charge.  *See id*.

Prior to sentencing, Petitioner filed a motion for new trial alleging that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing misconduct at the Office of the Chief Medical Examiner prior to its discovery.  (D.I. 13-5 at 2-23).  The Superior Court denied the motion for new trial but ordered retesting of the drugs in his case.  *See State v. McNair*, 2016 WL 424999, at *2 (Del. Super. Ct. Feb. 1, 2016).  The drugs retested positive for cocaine.  *See id*.

On November 18, 2016, the Superior Court sentenced Petitioner as a habitual offender to 35 years of imprisonment, suspended after 25 years, followed by decreasing levels of supervision.  *See McNair*, 2019 WL 5678359, at *1.  Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentence on October 2, 2017.  *See McNair v. State,* 172 A.3d 389 (Table), 2017 WL 4390422 (Del. Oct. 2, 2017).

On December 8, 2017, Petitioner field a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion for the appointment of counsel.  (D.I. 13-1 at Entry Nos. 63, 64; D.I. 13-12 at 131-34).  A Superior Court Commissioner granted the motion to appoint counsel.  (D.I. 13-1 at Entry No. 67).  On August 7, 2018, appointed postconviction counsel filed an amended Rule 61 motion.  (D.I. 13-12 at 125-79).  On October 29, 2019, the Superior Court Commissioner issued a Report and Recommendation that Petitioner's Rule 61 motion be denied.  (D.I. 13-10 at 42-57); *see McNair,* 2019 WL 5678359, at *6.  Petitioner

filed an appeal from the Commissioner's Report and Recommendation. (D.I. 13-12 at 232-49). On August 7, 2020, the Superior Court denied Petitioner's appeal, adopted the Commissioner's Report and Recommendation, and denied Petitioner's Rule 61 motion. *See State v. McNair,* 2020 WL 4559460, at *6 (Del. Super. Ct. Aug. 7, 2020). The Delaware Supreme Court affirmed that decision on May 18, 2021. *See McNair v. State*, 253 A.3d 92 (Table), 2021 WL 20291953 (Del. May 18, 2021).

## II.   GOVERNING LEGAL PRINCIPLES

### A.   The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural

default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

**C.    Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2]  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state

---

[2]    A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than

court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

---

on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## III.   DISCUSSION

Petitioner's timely filed Petition asserts the following three Claims for relief: (1) trial counsel provided ineffective assistance by failing to file a motion for judgment of acquittal on the basis that there was insufficient evidence supporting the PFDCF conviction (D.I. 4 at 7-9), and both trial and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence supporting the PFDCF and drug dealing convictions (D.I. 4 at 13-14); (2) trial counsel provided ineffective assistance by failing to present mitigating evidence (*i.e.*, a TASC Report)[3] to contradict the State's allegation that Petitioner possessed the cocaine to sell

---

[3]   The Treatment Access Center ("TASC") is a Delaware agency that performs initial drug and alcohol treatment assessments of offenders and provides preliminary treatment recommendations to the Superior Court Drug Court for use in disposition as well as for sentence modifications. *See* https://dhss.delaware.gov/dhss/dsamh/tasc.html. In this case, a TASC Report was prepared on January 7, 2013 by a TASC case manager who evaluated Petitioner in anticipation of his January 9, 2013 "Fast Track" court date. (D.I. 13-11 at 20-21). The purpose of the Report was to provide the Superior Court with a treatment recommendation to accompany Petitioner's sentence if a resolution was reached during the Fast Track court date. (D.I. 13-11 at 29). The Report – which was based on Petitioner's own representations – described Petitioner's substance abuse history. (D.I. 13-11 at 20) The TASC Report recommended substance abuse treatment, among other things. (D.I. 13-11 at 21).

(D.I. 4 at 11-13); and (3) trial and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of Counts Three (PFBPP) and Four (CCDW) of the indictment (D.I. 4 at 11, 13).[4]

### A.    Claims One and Two

Petitioner presented Claims One and Two in his amended Rule 61 motion and on post-conviction appeal, and both the Superior Court and the Delaware Supreme Court rejected the allegations asserted in both Claims as meritless.  Therefore, Claims One and Two will only warrant relief if the Delaware state court decisions[5] were either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of both trial and appellate counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of

---

[4]    Although Petitioner contends that trial and appellate counsel were also  ineffective for failing to challenge the sufficiency of Count V – driving without a valid license (D.I. 4 at 13) – he does not mention Count V in the remaining part of his argument.  Therefore, the Court focuses on Petitioner's argument concerning Counts Three (PFBPP) and Four (CCDW).

[5]    When denying the ineffective assistance of counsel arguments in Claim One, the Delaware Supreme Court primarily relied on the Superior Court's reasoning after providing one clarification with respect to the applicable standard for establishing the possession element for a PCFDC conviction.  Given these circumstances, the Court will refer to both decisions when reviewing Claim One. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later  unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court  judgment); *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient performance prong and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Finally, an attorney's decision about which issues to raise on appeal are strategic,[6] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the

---

[6]    *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

Delaware state court decisions were not contrary to clearly established federal law because the Superior Court correctly identified the *Strickland* standard applicable to Claims One and Two.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware state courts reasonably applied the *Strickland* standard to the facts of Petitioner's case.  When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware state court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[7]  *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id*.  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded

---

[7]     As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

jurists could disagree on the correctness of the state court's decision." *Id*. at 101.  The Court will review Claims One and Two under the second prong of § 2254(d)(1) *in seriatim*.

> **1.      Claim One:  IATC and IAAC for Failing to Challenge the Sufficiency of the Evidence Supporting Petitioner's Drug Dealing and PFDCF Convictions**

In Claim One, Petitioner argues that trial and appellate counsel provided ineffective assistance ("IATC" and "IAAC") by failing to challenge the sufficiency of the evidence supporting his drug dealing conviction because the State's expert witness – Detective Janvier – failed to establish that Petitioner possessed the cocaine with an intent to deliver.  (D.I. 4 at 13-14; D.I. 16 at 3-8).  Petitioner also argues that both trial and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence underlying his PFDCF conviction on the basis that the State failed to prove that he possessed the gun.  (D.I. 4 at 8-9).  According to Petitioner, the "presence of the firearm in the vehicle at the time of the arrest was circumstantial evidence and the mere proximity to the contraband in the vehicle was not enough to prove possession."  (D.I. 4 at 8).

In his amended Rule 61 motion, Petitioner alleged trial counsel was ineffective for failing to move for judgment of acquittal because "no rational trier of fact could have found the essential elements of [PFDCF] or Drug Dealing beyond a reasonable doubt given the insufficient evidence presented by the State."   ( D.I. 13-12 at 153).  Petitioner argued the State could not prove he possessed the firearm because "mere proximity to contraband is not enough," and the State could not prove drug dealing because the State's expert, Detective Andrea Janvier's, testimony was "fraught with credibility issues."  (*See* D.I. 13-12 at 154-55).  Petitioner also asserted that  appellate counsel was ineffective for failing to raise the same insufficient evidence arguments on appeal. (*See id*. at 172-77).

The Superior Court Commissioner held that Petitioner's ineffective assistance of counsel claims lacked merit because a motion for judgment of acquittal or an argument of insufficient evidence on appeal would not have succeeded, stating, "[w]hen viewed in the light most favorable to the State there was sufficient evidence to support the conviction of Drug Dealing and PFDCF." *McNair*, 2019 WL 5678359, at *4.  As to Petitioner's claim that Detective Janvier's testimony was "fraught with credibility issues," the Commissioner noted that credibility issues are for the jury to determine and pointed out that the jury could have logically disregarded Petitioner's explanation about why he was in possession of the drugs and the gun as self-serving and "too convenient and too uncorroborated for the jury to give it any credence." *Id*.

The Superior Court adopted the Commissioner's Report, explaining

> [The extensive record supports that a reasonable trier of fact could find [Petitioner] guilty of possession.  Even considering [Petitioner's] arguments on appeal, while it is true that some courts have ruled that proximity to firearm alone is insufficient proof to establish possession, the facts here are distinguished from [Petitioner's] cited cases.

> [Petitioner] was the sole occupant and operator of a rental vehicle where contraband was found on his person and a firearm under the passenger seat with a men's jacket and [Petitioner's] identification. The Delaware Supreme Court has held that it is appropriate to presume the custodian of an automobile "to have dominion and control of contraband found in the automobile; and that if . . . such dominion and control may be found to be a conscious dominion and control, the evidence is sufficient to warrant the conclusion of 'possession' as to the custodian.

> As to the claim that counsel should have moved for judgment of acquittal on Drug Dealing, [Petitioner] reasserts that [the] State's drug expert, Detective Janvier, was unconvincing and that "it is clear that no rational trier of fact could find [Petitioner] guilty beyond reasonable doubt of Drug Dealing."  This Court echoes the sentiments expressed in the Commissioner's Report as to the logical inferences that could have been drawn by the jury given the record before it.

*McNair*, 2020 WL 4559460, at *4-5 (quoting *Holden v. State*, 305 A.2d 320, 322 (Del. 1973)).

The Delaware Supreme Court affirmed the Superior Court's decision after clarifying that "possessing a deadly weapon during the commission of a felony requires more than merely possessing a gun using the traditional 'dominion and control' standard." *McNair*, 2021 WL 2029195, at *1. The Delaware Supreme Court opined:

> The State must establish physical availability and accessibility *in addition to* actual or constructive possession. To establish constructive possession of the firearm, the State needed to present evidence that [Petitioner] knew the location of the firearm, had the ability to exercise dominion and control over the firearm, and "intended to guide the destiny" of the firearm.
>
> We conclude that the State presented sufficient evidence, when viewed in the light most favorable to the prosecution, to support the jury's conclusion that the firearm was accessible to [Petitioner] and that he had constructive possession of it while simultaneously possessing cocaine. The arresting officer testified that the gun was only an arm's length from [Petitioner]—the only occupant of the car when the police stopped it—as he sat in the driver's seat and was therefore accessible to him.
>
> [Petitioner] told the arresting officer that the gun belonged to a friend who had been in the car earlier that day. [Petitioner] said that he asked the friend if he could look at it and admitted that, when the friend showed it to him, he held it but then handed it back to the friend. [Petitioner], who claimed that he did not know that the friend left the gun behind, offered no explanation of why his friend, who was not in the car at the time of the stop leading to [Petitioner's] arrest, would have left the gun in [Petitioner's] car.
>
> A reasonable trier of fact would be justified in rejecting [Petitioner's] self-serving statement that the gun belonged to his friend who had, unbeknownst to [Petitioner], left it in the car. Likewise, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could find beyond a reasonable doubt that the gun was accessible to [Petitioner] and that he knew it was

> within his reach under the car seat at all relevant times. Accordingly, a motion for judgment of acquittal on the PFDCF count, had one been made, would have lacked merit. It follows that it was not objectively unreasonable for [Petitioner's] trial counsel to forgo such a motion.

*McNair*, 2021 WL 2029195, at *1-2.

The standard of review applicable to the sufficiency of the evidence claim underlying Petitioner's ineffective assistance allegations in Claim One is articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt, and "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. A jury's verdict may be based entirely on circumstantial evidence, so long as the *Jackson* standard is satisfied, and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954); *see also Lum v. State*, 101 A.3d 970, 971 (Del. 2014) (noting that, when determining if there was sufficient evidence, the Delaware Supreme Court does not distinguish between direct and circumstantial evidence). Delaware's sufficiency of the evidence standard is identical to the standard articulated in *Jackson*, *see Carter v. State*, 933 A.2d 774, 777 (Del. 2007); *Binaird v. Pierce*, 981 F. Supp. 2d 281, 290 (D. Del. 2013), and Delaware courts apply that same standard to sufficiency of the evidence claims raised in a motion for

judgment of acquittal and in an argument on appeal.  *See Winningham v. State*, 296 A.3d 354, 360 (Del. 2023); *Loper v. State*, 170 A.3d 148 (Table), 2017 WL 3612092, at *2 (Del. Aug. 18, 2017).

### a.   Drug Dealing

To prove Petitioner committed the crime of drug dealing, the State was required to establish Petitioner: (1) possessed cocaine; (2) knowingly; (3) with intent to deliver it; and (4) the offense occurred in a car.  (D.I. 13-4 at 13; D.I. 13-11 at 152; D.I. 13-18 at 10); *see* 16 Del. § 4753(2). "[P]ossession, quantity, and packaging of drugs are not necessarily sufficient, standing alone, to prove intent to deliver." *Hardin v. State*, 844 A.2d 982, 988 (Del. 2003).  The State must

> prove an additional element beyond possession, quantity [or] packaging to establish that the defendant was not possessing the drugs for personal consumption.  This element can take the form of expert testimony . . . linking the amount and packaging of drugs [the defendant] possessed with any intent to deliver those drugs.

*Davis v. State*, 2024 WL 1739742, at *5 (Del. Apr. 23, 2024) (cleaned up and citations omitted).

The jury in Petitioner's case was presented with the following evidence: (1) Petitioner was the driver and sole occupant of a car rented by another person – a woman (D.I. 13-11 at 88, 90); (2) at the time of vehicle stop and Petitioner's arrest, Petitioner had in his waistband a clear knotted plastic bag that contained 5.38 grams of an off-white chunky substance and seven small Ziploc bags containing .82 grams of a similar substance, all of which later tested positive for cocaine (D.I. 13-11 at 95-96, 121-22); (3) Petitioner admitted the bags contained cocaine (D.I. 13-11 at 95); (4) when questioned by the police, Petitioner stated he had stolen the drugs from an alleyway and was speeding out of the area when he was stopped by the police (D.I. 13-4 at 31); (5) Petitioner stated he was planning to mix the crack cocaine with marijuana to smoke it (D.I. 13-14 at 31, 33); (6) no marijuana was found in the car, nor was any drug paraphernalia indicating Petitioner used drugs for personal use (D.I. 13-4 at 31); (7) Petitioner had $231 on his person (D.I. 13-11 at 95); (8) a gun was found underneath the right front passenger seat (D.I. 13-11 at 88, 114); (9) when

questioned by the police, Petitioner stated a friend had left the gun in the car (D.I. 13-4 at 33); (10) a man's black coat containing Petitioner's identification card was on the same right front passenger seat (D.I. 13-11 at 89); (11) the officer who located the gun testified that it was about an arm's length from the driver's seat and would have been accessible to Petitioner (D.I. 13-11 at 90); and (12) the police found paperwork belonging to Petitioner and men's clothing in the trunk of the car (D.I. 13-11 at 89), and no women's clothing was found in the car (D.I. 13-11 at 90).

During Petitioner's trial, the State presented Detective Janvier's expert testimony to connect the packaging and quantity of drugs found in Petitioner's possession with an intent to deliver. (D.I. 13-11 at 130-38). Based on her experience and training, Detective Janvier opined that Petitioner had the requisite intent to deliver because: (1) the cocaine was packaged in both the break-off and individual baggies; (2) the cocaine was found hidden in the waistband of Petitioner's pants; (3) $231 in cash was found on Petitioner's person; (4) there was no paraphernalia indicating personal use (*e.g.*, a pipe or wire mesh); and (4) Petitioner was driving a rental car under a different person's name. (D.I. 13-11 at 131-33).

In this proceeding, Petitioner argues that Detective Janvier's expert opinion lacked the credibility to sufficiently establish that he possessed the cocaine with intent to deliver because: (1) the Detective "fumble[d] in her speech" (D.I. 16 at 7); (2) "she formed her opinion after skimming Detective Kucharski's police report for about five minutes and without having physically examined the drug evidence, the envelope containing the drug evidence, or the OCME's lab report" (D.I. 13-12 at 155); and (3) during cross-examination, Detective Janvier conceded that some of the factors upon which she based her opinion that Petitioner possessed the cocaine with intent to deliver were also indicative of possession without an intent to deliver (D.I. 13-14 at 12). Petitioner's argument is unavailing. It is the "jury's function in every case . . . to weigh the

credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Clifford*, 704 F.2d 86, 90 (3d Cir. 1983); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Although Detective Janvier testified she had initially formed her opinion after reading the police report, she also stated that she was rendering her opinion of intent to deliver based on the Medical Examiner's report and the actual evidence that was presented at trial. (D.I. 13-4 at 67-68). Trial counsel thoroughly cross-examined Detective Janvier on her experience, method of analysis, and the factors she viewed as indicating an intent of personal use versus an intent to deliver, highlighting any contradictions in the Detective's testimony. (D.I. 13-4 at 67-72) Trial counsel also used closing argument to underscore any contradictions in Detective Janvier's testimony, and reminded the jurors that it was their prerogative to give whatever weight and credibility they wanted to the Detective's testimony. (D.I. 13-4 at 78). In addition, the trial court instructed the jurors that it was their responsibility to determine the credibility of each witness and the weight to be given to their testimony, and to reconcile conflicts in the evidence. (D.I. 13-4 at 85, 88). Nothing in the record indicates that the jury failed to properly carry out its charge.

Given these circumstances and viewing all the evidence and testimony presented at trial in the light most favorable to the State, the Delaware state courts reasonably concluded Detective Janvier's testimony established that the quantity and packaging of the drugs was inconsistent with exclusively personal use and provided a sufficient basis for the jury to conclude that Petitioner intended to distribute the drugs. *See, e.g., White v. State*, 2003 WL 23019194 at *2 (Del. Dec. 24, 2003) (holding that expert testimony based on quality and value of drugs and lack of paraphernalia consistent with purely personal use was a sufficient basis to conclude intent to deliver); *Ashley v.*

17

*State*, 988 A.2d 420, 423 (Del. 2010) (noting that a "drug user can also be a dealer."). In turn, the Delaware state courts reasonably determined that challenging the sufficiency of the evidence supporting Petitioner's drug dealing conviction via a motion for a judgment of acquittal or on direct appeal would not have been successful.

An attorney's failure to raise a meritless objection or present a meritless argument does not amount to constitutionally ineffective assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Thus, the Court concludes that the Delaware state courts reasonably applied *Strickland* in holding that trial and appellate counsel's failure to present a meritless challenge to the sufficiency of the evidence supporting Petitioner's drug dealing conviction did not amount to  constitutionally ineffective assistance.

### b.    PFDCF

In order for Petitioner to be found guilty of PFDCF under 11 Del. Code Ann. § 1447A, the State had to prove beyond a reasonable doubt that he actually or constructively possessed the gun and that the gun was "physically available or accessible" to Petitioner during the commission of the underlying felony. *See Maddrey v. State*, 975 A.2d 772, 775 (Del. 2009); *Lecates v. State*, 987 A.2d 413, 421 (Del. 2009) ("The State must establish physical availability and accessibility *in addition* to proving actual or constructive possession."). "To establish constructive possession of the firearm, the State needed to present evidence that [Petitioner] knew the location of the firearm, had the ability to exercise dominion and control over the firearm, and 'intended to guide the destiny' of the firearm." *McNair*, 2021 WL 2029195 at *1. Importantly, the "elements of availability and accessibility" can be established even if the weapon is not "in the offender's immediate physical possession or within easy reaching distance of the offender." *Willingham v.*

*State*, 297 A.3d 287 (Table), 2023 WL 3144218, at 84 (Del. Apr. 27, 2023).  For instance, the Delaware Supreme Court has held that the availability or accessibility elements were satisfied

> when a gun and drugs were found in the defendant's bedroom, even though the defendant was observed conducting drug transactions outside the home and was arrested outside; drugs and guns were found in a handbag in the trunk of a car that an officer had seen the defendant driving, which was parked outside the home of the defendant and his girlfriend, and the defendant and his girlfriend were inside the home when the police executed a search warrant; a rifle and handgun were located less than 25 feet from the place where the narcotic drugs were discovered; and handguns were found in a locked safe in the defendant's bedroom, where drugs and drug paraphernalia were also located.

*Id*. at * 5 (cleaned up).

Petitioner asserts that trial and appellate counsel should have argued his "mere proximity" to the gun found in the car was insufficient to support his PFDCF conviction.  Under Delaware law, "the dispositive aspects of the term 'possession' within the meaning of the [PFDCF] statute are the elements of 'availability' and 'accessibility.'"  *Maddrey*, 975 A.2d at 775.  The record in this case reasonably supported the Delaware state courts' factual determination that the firearm found underneath the front passenger seat was available and accessible to Petitioner during the commission of the drug dealing crime.[8]  In turn, viewing the totality of the evidence in a light most favorable to the State demonstrates that there was sufficient evidence from which a rational jury could have concluded that Petitioner committed the crime of possession of a firearm during the commission of a felony (drug dealing).  Thus, the Court concludes that the Delaware state courts reasonably applied *Strickland* in holding that neither trial nor appellate counsel provided

---

[8]     As previously explained, Petitioner was the driver and sole occupant of the car, the gun was found under the right front passenger seat, a coat containing Petitioner's identification was located on that same passenger seat, and the officer who located the gun testified that the gun was about an arm's length from, and would have been accessible from, the driver's seat.

constitutionally ineffective assistance by failing to raise a meritless sufficiency of the evidence challenge to Petitioner's PFDCF conviction.

Accordingly, the Court will deny Claim One in its entirety for failing to satisfy § 2254(d).

### 2. Claim Two: IATC for Failing to Introduce Petitioner's Drug Treatment Report as Mitigating Evidence

In Claim Two, Petitioner contends that trial counsel provided ineffective assistance by failing to introduce as evidence the TASC Report, "if only to minimize the [drug dealing] count." (D.I. 4 at 12). Petitioner presented Claim Two to the Superior Court in his Rule 61 motion, arguing that the TASC Report would have supported an argument that he possessed the cocaine for personal consumption, not for resale. (D.I. 13-12 at 168-69). The Superior Court concluded that trial counsel did not render ineffective assistance by failing to introduce the TASC Report because the Report would have been inadmissible under Delaware Rules of Evidence 801(c), 803(6), or 807. *See McNair*, 2018 WL 5678359, at *5 (Commissioner's R&R finding that the TASC Report was inadmissible under D.R.E.801(c); *McNair*, 2020 WL 4559460, at *5-6 (Superior Court's adoption of the R&R and determination that the TASC Report was also inadmissible under D.R.E. 803(6) and 807)). The Delaware Supreme Court affirmed the Superior Court's decision "on the basis of the Superior Court's August 7, 2020 Order adopting the Commissioner's October 29, 2019 Report and Recommendation." *McNair*, 2021 WL 2029195, at *1.

The Court must defer to the Delaware state courts' determination that the TASC Report would have been inadmissible under Delaware evidentiary law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state-law questions"). Given the inadmissibility of the TASC Report, the Court concludes Delaware state courts reasonably applied *Strickland* when holding that trial counsel was not ineffective for failing to investigate and present the allegedly favorable information contained

therein. *See Sanders*, 165 F.3d at 253 ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); *Preister v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004).

Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

**B.    Claim Three: IATC and IAAC for Failing to Challenge Sufficiency of Indictment**

In Claim Three, Petitioner contends that trial and appellate counsel were ineffective for failing to challenge the indictment for being defective, because he was acquitted of the PFBPP (Count Three) and CCDW (Count Four) charges, which required a finding that Petitioner drove a vehicle. (D.I. 4 at 11; D.I. 16 at 1-2). According to Petitioner, if you "take away these two counts III and IV, the State ha[d] a weak case, and may in fact [have] sought to extend a good plea deal." (D.I. 4 at 11).

The Court perceives three ways of construing Claim Three: (1) trial and appellate counsel were ineffective for not challenging Counts Three and Four of the indictment as being defective because the jury acquitted him on both counts; (2) trial and appellate counsel were ineffective for not challenging the sufficiency of the evidence supporting his convictions for Counts One (drug dealing) and Two (PFDCF) due to the fact that he was acquitted on Counts Three (PFBPP) and Four (CCDW); or (3) trial and appellate counsel were ineffective for not challenging the sufficiency of the evidence on the basis that his convictions on Counts One (drug dealing) and Two (PFDCF) were inconsistent with the jury's acquittal on Counts Three (PFBPP) and Four (CCDW). Petitioner did not exhaust state remedies for Claim Three because he did not present any of the three possible arguments to the Delaware state courts in his Rule 61 motion or on post-conviction appeal.

At this juncture, any attempt by Petitioner to raise Claim Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as second or subsequent under Rule 61(i)(2).  *See, e.g., Wilson v. May*, 2022 WL 823581, at *6 (D. Del. Mar. 18, 2022).  Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rules 61(i)(1) and 61(i)(2) apply in this case,[9] any attempt to exhaust state remedies would be futile.  Given this futility, the Court must treat Claim Three as technically exhausted but procedurally defaulted.  Therefore, the Court cannot review the merits of the instant Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner appears to rely on *Martinz v. Ryan*, 566 U.S. 1, 9 (2012) to establish cause for his default of the instant IATC and IAAC allegations and blames post-conviction counsel for not raising Claim Three in his Rule 61 proceeding and post-conviction appeal.  (D.I. 16 at 14-15).  In *Martinez*, the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may (under certain circumstances) establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *Id.* at 16-17.  In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, and that the underlying ineffective assistance of trial counsel claim is substantial or has "some merit."  *See Workman v. Sup't Albion, SCI*, 915 F.3d 928, 937 (3d Cir. 2019).  To demonstrate that

---

[9]     Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid.  *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5).  Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to Claim Three.

an IATC claim is substantial, a petitioner must "show that some reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 938. This standard of "substantiality is a notably lower standard than the proof of prejudice required by *Strickland*'s second prong." *See Richardson v. Sup't Coal Twp. SCI*, 905 F.3d 750, 764 (3d Cir. 2018).

Here, the *Martinez* rule cannot excuse Petitioner's procedural default of Claim Three's ineffective assistance of appellate counsel arguments because *Martinez* only provides a method of establishing cause for a failure to raise an ineffective assistance of *trial* counsel claim. *See Davila v. Davis*, 137 S.Ct. 2058, 2068 (2017) (declining to extend *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Greene v. Sup't Smithfield, SCI*, 882 F.3d 443, 450-51 (3d Cir. 2018). The *Martinez* rule also does not excuse Petitioner's default of Claim Three's allegations that trial counsel should have challenged the sufficiency of the indictment or the sufficiency of the evidence supporting his drug dealing and PFDCF convictions due to the fact that he was acquitted of PFBPP and CCDW. The sufficiency of an indictment is not measured by the successful litigation of all counts. Rather, it is measured by two criteria: "first, whether [it] contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States,* 369 U.S. 749, 763–64 (1962). Petitioner does not allege that the indictment failed to provide adequate notice of the charges against him or that the indictment failed to provide adequate protection for double jeopardy purposes. Thus, to

the extent Petitioner's argument concerns trial counsel's failure to challenge the sufficiency of the indictment, the argument is not substantial.

As for Petitioner's contention concerning the inconsistent verdicts, under Delaware's jury lenity rule, a court "may uphold a conviction that is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction." *King v. State*, 2015 WL 5169249, at *2 (Del. Aug. 26, 2015). Since, as previously explained, the Delaware Supreme Court reasonably concluded there was sufficient evidence to support Petitioner's PFDCF and drug dealing convictions, *see supra* at Section III.A, Petitioner cannot demonstrate that the ineffective assistance of trial counsel allegations concerning insufficient evidence is substantial.

In sum, *Martinez* does not provide a mechanism for establishing cause for Petitioner's default of any of the three possible arguments in Claim Three. Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine is inapplicable because Petitioner has failed to provide new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Three as procedurally barred from habeas review.

## IV.   **EVIDENTIARY HEARING**

Petitioner asks the Court to conduct an evidentiary hearing "so that he may develop ineffectiveness as well as [a] challenge to the indictment." (D.I. 4 at 11). As a general rule, when a petitioner seeks a writ of habeas corpus in federal court, the factual record of the case is "limited to the record that was before the state court that adjudicated the clam on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that

> (A)  the claim relies on –
>> (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  If a petitioner cannot satisfy this standard, the federal court is barred from conduction an evidentiary hearing.

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S.465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474.  An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts.  *Id*.

Petitioner has not argued that his Claims rely on a new rule of constitutional law or a factual predicate that could not have been previously discovered.  Additionally, Petitioner's assertions do not demonstrate how a hearing would advance his arguments.  Thus, an evidentiary hearing is not warranted.  *See Shinn v. Ramirez*, 142 S.Ct. 1718, 1740 (2022) (explaining that, even when

ineffective assistance of postconviction counsel prevented the state court record from being adequately developed, there is "no warrant to impose any factfinding requirements beyond [28 U.S.C.] § 2254(e)(2)'s narrow exceptions to [the Antiterrorism and Effective Death Penalty Act's] general bar on evidentiary hearings."); *Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022) (clarifying that, after *Shinn*, the proper procedure for determining whether to excuse a petitioner's procedural default is to first "decide whether an underlying ineffectiveness claim succeeds considering only the state court record" before holding a *Martinez* hearing).

## V.     <u>CERTIFICATE OF APPEALABILITY</u>

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability in this case.

**VI.** **CONCLUSION**

For the reasons discussed, the Court will deny the instant Petition without issuing a certificate of appealability or holding an evidentiary hearing. The Court will enter an Order consistent with this consistent with this Memorandum Opinion.